FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED

06 JUN 16 PH 1:38

U.S. DISTRICT COURT
N.D. OF ALABAMA

JUN 1 6 2004

| | | |
|---|---|---|
| VYLSE ALDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 00-PWG-1957-S |
| | ) | |
| PARISIAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

Vylse Alderson, plaintiff, filed this action against Parisian, Inc., defendant, alleging race,

gender, and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1965, as

amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981

(" §1981"); and the Family and Medical Leave Act of 1993, 20 U.S.C. § 2601 ("FMLA"). The

parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and

LR 73.2.

This matter is before the court on the motion of defendant Parisian for summary judgment.

(Doc. # 17).  Summary judgment is appropriate only if there are no genuine issues of material fact

and the movant is entitled to judgment as a matter of law.   Rule 56, *Federal Rules of Civil

Procedure*.  In making that assessment, the court must view the evidence in a light most favorable

to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex

Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish

his prima facie entitlement to summary judgment by showing the absence of genuine issues and that

he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.

1991).  Once that initial burden has been carried, however, the non-moving party may not merely

38

rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, the nonmoving party. Vylse Alderson began working for Parisian on February 10, 1994 as a sales associate in the Fragrance Department at the Eastwood Mall store. (Alderson depo, pp. 37,44). She alleges that four months after she began working for Parisian, her manager began to discriminate against her on the basis of her race, treating her differently with regards to breaks, the maintenance of call books, stock responsibilities and personal telephone calls. (Alderson depo, pp. 50-51, 57, 59). Although Ms. Alderson has complained about the differing treatment to her managers, she did not tell them that the different treatment was based on race. (Alderson depo, pp.

70-73, 80, 118, 197). She states that when Charles Weinsteger became Manager of Fragrance at Eastwood Mall in July or August of 1996, the discrimination against plaintiff and the other black employee stopped. (Alderson depo, p. 40; Weinsteger decl at ¶ 2). Ms. Alderson admits that she never complained to Weinsteger about discrimination. (Weinsteger decl. at ¶ 3). Ms. Alderson does not contend the Human Resource Managers discriminated against black employees but only that the Department Managers discriminated against black employees. (Alderson depo., p. 39).

As a result of complications during her pregnancy, Ms. Alderson went on leave on December 24, 1996. (Complaint at ¶ 8; Alderson depo, p. 127). The initial leave form requested leave from December 29, 1996 until February 14, 1997. The request was approved and signed by Liz Wood the Human Resources Manager at the Eastwood Mall location. (Alderson depo, ex #4; Gruening depo, p. 26). In February of 1997, Ms. Alderson was told by Ms. Wood that if she was out on medical leave for more than six months, she would be "terminated" out of the Parisian computer system. (Alderson depo, p. 88). A second leave form dated March 6, 1997 requested leave from February 13, 1997 until March 27, 1997; however, this form does not include the signature of a Parisian manager (Alderson depo., ex #5). A third leave form dated April 16, 1997 requesting that additional leave be approved from March 29, 1997 until July 19, 1997 also does not include the signature of a Parisian manager. (Alderson depo., ex. #9).

In late September or early October of 1997, Ms. Alderson called then personnel manager Cindy Pape and requested that she be transferred to the downtown store when she returned to work. (Alderson depo, pp. 91-96). Ms. Pape informed Ms. Alderson that her employment had been terminated (Pape depo, pp. 112-13; Alderson depo, p. 95) and that if she wanted to return to Parisian she would have to apply for a job. (Pape depo, pp. 27, 114; Alderson depo, p. 94). Ms. Pape also

told her that she would need to get a release from her physician. (Pape depo, p. 88). In a letter dated October 23, 1997, Ms. Alderson's physician released her from her care as of October 13, 1997 to return to work.  From October until December 1997, Ms. Alderson talked with several Parisian managers about going back to work but was told that there was nothing available. (Alderson depo, pp. 42-44, 86-95, 100, 109-114). Ms. Alderson learned in October of 1997 that six white women had been hired as cashiers at Eastwood Mall. (Alderson depo, p. 117).  She testified that she believed that Parisian's failure to rehire her in the fall of 1997 was based on race and was in retaliation for her complaints to the managers while she was working and her efforts to obtain unemployment compensation. (Alderson depo, p. 117, 192, 194)

Ms. Alderson filed for unemployment benefits.  During the hearing, she learned that she had been terminated on June 15, 1997. (Alderson depo., pp.97-98).  On January 22, 1998, Ms. Alderson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on her gender and pregnancy. (Alderson depo., ex. #1, plaintiff's Exh. #4).  On February 12, 1999, Ms. Alderson filed a second charge of discrimination alleging discrimination based on her race. (Alderson depo., ex. #3, plaintiff's Exh. #5) On April 2, 1999, the EEOC issued a cause determination on the gender and pregnancy charge stating that it found probable cause that Ms. Alderson had been discriminated against due to her pregnancy. (Gruening depo, p. 50, plaintiff's Exh. #6).  Ms. Alderson does not provide any evidence that another woman was not allowed to return to work as a result of pregnancy. (Alderson depo, p. 36).  On April 17, 2000, Ms. Alderson received a  Notice of Right to Sue from the EEOC  regarding the race discrimination charge. (Plaintiff's Exh. #7).  This action was filed on July 14, 2000.

I.    <u>Timeliness of Title VII claim of racial discrimination</u>

In the complaint, Ms. Alderson alleges that Parisian discriminated against her based on her race, African American, when she was terminated on June 15, 1997 while on maternity leave and when she was not allowed to return to work in her former job or to be rehired in any position even though Parisian hired six cashiers and a sales associate in ladies shoes, all of whom were white, by some time in October 1997.

An EEOC charge must be filed within 180 days of the alleged discrimination.  42 U.S.C. § 2000e-5(a).  The filing of an EEOC charge is ordinarily a jurisdictional prerequisite to a Title VII action.  *Chanda v. Engelhard/ICC*, 234 F.3d 1219,  1225 (11th Cir. 2000).

On January 22, 1998, Ms. Alderson filed a charge of discrimination with the EEOC alleging that she was discriminated against based on her gender and pregnancy when she was terminated June 15, 1997 and denied the opportunity to return to work in October, 1997.  Ms. Alderson checked the box indicating that the cause of discrimination was based on "sex."  The charge includes the following particulars:

I.      I was hired with the Respondent on February 10, 1994.  I was employed as a Sales Associate in the Fragrance Department.  On December 24, 1996, I went on maternity medical leave.  A second extension of the maternity medical leave was from March 29, 1997 until July 19, 1997. This extension was based on a doctor's statement dated March 27, 1997.  On June 15, 1997, I was discharged while still on the maternity medical leave.  On October 13, 1997, I was released to return to work after using the allotted 12 weeks of regular leave plus the 12 weeks of leave under the Family Leave Act.  I have been denied the opportunity of returning to work.

II.     The Respondent said that I quit my job.  I denied that I quit my job.

III.    I believe that I have been discriminated against because of my sex, female (pregnancy) in violation of Title VII of the Civil Rights Act of 19964, as amended.

5

(Plaintiff's exhibit 4).

On February 12, 1999, Ms. Alderson filed a second charge of discrimination alleging discrimination based on her race. On the second charge, Ms. Alderson checked the box indicating that the cause of discrimination was based on "race." The charge includes the following particulars:

> I am a 34 year old black female. I began working for Parisian on February 10, 1994, as a sales associate in the Fragrance Department. On December 24, 1996, I went on maternity leave due to complications with my pregnancy. The leave was extended from March 29, 1997, until July 19, 1997. On June 15, 1997, I was terminated while still on maternity medical leave. On October 13, 1997, I was released to return to work. I talked with several Parisian managers, including the manager of the fragrance department, Charlie Winestagger; Leigh Colpac, the acting manager of personnel; Sonya Butler, the manager of the cosmetic department at the Five Points West location; Leigh Ricketts, the store manager at the downtown store; Elliott Marcus, store manager of the Eastwood store; Cindy Pape, then-personnel manager; and Lori Barbra at the corporate office, about going back to work at Parisian. Each time I was told there was nothing available. I recently learned that during the same time period I was asking to return to work, Parisian hired six cashiers and a sales associate in ladies shows. All those hired were white.
>
> I believe that my termination, and Parisian's failure to rehire me, is in violation of my rights under Title VII of the Civil Rights Act of 1964. The work environment at Parisian is marked by racially discriminatory practices whereby black employees are treated in an unequal and unfair manner. There have been several positions for which I was qualified and had expressed an interest, which were awarded to white employees. For this reason, I believe that my rights under Title VII of the Civil Rights Act of 1964, as amended, have been violated. I believe my rights under the Family and Medical Leave Act were also violated, along with Title VII, the Civil Rights Act of

> 1964 (gender), as previously noted in my original
> charge.

(Plaintiff's exhibit 5).

Ms. Alderson argues that the second charge was an amended charge that should relate back to the

original charge, relying on *Turner v. Orr*, 804 F.2d 1223, 1226 (11th Cir. 1986) in support of this

position.  In *Chanda v. Engelhard/ICC, supra,* the Eleventh Circuit held:

> A Title VII action... may be based "not only upon the
> specific complaints made by the employee's initial
> EEOC charge, but also upon any kind of
> discrimination like or related to the charge's
> allegations, limited only by the scope of the EEOC
> investigation that could reasonably be expected to
> grow out of the initial charges of discrimination."

234 F.3d at 1225, citing *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)(quoting

*Fellows v. Universal Restaurants Inc.*, 701 F.2d 447, 451 (5th Cir.), *cert. denied*, 464 U.S. 828

(1983)).

The standard set forth in *Chanda* is the same as the standard set forth in *Turner*.  In *Turner,*

the first charge alleged racial discrimination in "promotion" and the second charge alleged racial

discrimination with respect to a specific position.  Both charges nevertheless related to racial

discrimination.  In *Chanda*,  the initial charge alleged retaliation for complaining of discrimination

based on his disability, and the second charge based a retaliation claim on national origin

discrimination.  The court concluded:

> "Nothing in his EEOC filing mentions discrimination based on
> national origin, any complaint about such discrimination, or a claim
> under Title VII.

> We must conclude, therefore that a reasonable investigation based on
> the EEOC charge did not and would not encompass retaliation based
> on complaints about national original discrimination."

234 F.3d at 1225.

In this case, the only type of discrimination alleged or even alluded to in the first charge was sex

discrimination.   A reasonable EEOC investigation based on the sex discrimination charge would

not encompass racial discrimination.  Although the second charge indicated that it is an "amended

charge," the EEOC properly perceived it as a separate charge.  Plaintiff did not meet the 180 day

time limit on the second charge because she knew of the hiring of the white cashiers in October,

1997 but did not file the second charge until February 12, 1999.  Because the race discrimination

charge was not filed within 180 days of the alleged discrimination, Ms. Alderson has failed to meet

the initial jurisdictional requirement for her Title VII race discrimination claim by not including it

in her initial EEOC charge for sex discrimination.  Parisian is entitled to summary judgment on this

claim.

II.    Section 1981 claims of racial discrimination

In her complaint, Ms. Alderson relies on the same set of facts in support of her § 1981 claim

as she relied on in support of her Title VII race discrimination claim.

A.    Timeliness

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the United States

Supreme Court pointed out that the statute of limitations in a Title VII claim of disparate treatment

begins running on the date of each discrete act of alleged discrimination. Conversely, a hostile work

environment is timely filed if any of the acts fell within the statutory time period.  *Id*.  *See also,*

*Shields v. Fort James Corp.*, 305 F.3d 1280 (11th Cir. 2002).   The termination, failure to give a

8

raise, and the failure to rehire are discrete acts of alleged discrimination. The litany of work conditions cumulatively constitute an apparent hostile work environment claim.

The United States Supreme Court recently held that the statute of limitations in a § 1981 claim is four years. *Jones v. R.R. Donnelley & Sons Company*, ____ U.S. ____, 124 S.Ct. 1836, ____ L.Ed.2d ____, 41 U.S.L.W. 4332 (2004). Ms. Alderson testified that the race discrimination in her work conditions (the hostile work environment claim) began four months after she began working at the Eastwood Mall store in February of 1994 and continued until Charles Weinsteger became Manager of Fragrance at Eastwood Mall in July or August of 1996. Because this action was filed on July 14, 2000 and neither party has provided the court with the precise date on which Mr. Weinsteger became manager of fragrance, the court concludes that there is a question of material fact that precludes a finding that the hostile work environment claim is untimely.

The § 1981 claim that plaintiff was discriminated against based on race in July, 1997 when she was terminated and in October, 1997 when she was not rehired but six white cashiers were hired is also timely as it was filed within the four year statute of limitation period.

Ms. Alderson's claim that she was denied a raise in March 1996 is untimely as this action was not filed until July 14, 2000, more than four years after the denial of the raise. Ms. Alderson testified that she was treated differently than her white co-workers when it came to getting raises. Specifically, she testified that her record of sales was as good as a white employee, Stephanie Shaw, and Shaw's call books were not up to date like her call book yet Shaw received a raise while Ms. Alderson did not receive the raise in March, 1996. (Alderson depo, pp. 69-70).

9

B.    Merits of § 1981 claims

The same analytical framework applies to both Title VII and § 1981 claims. *Bass v. Board of County Commissioners, Orange County, Florida*, 256 F.3d 1095, 1109 (11th Cir. 2001); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Where, as here, Ms. Alderson offers circumstantial evidence to prove a Title VII claim, the court applies the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Standard*, 161 F.3d at 1331. To establish a *prima face* case of disparate treatment employment discrimination, Ms. Alderson must show that she was a qualified member of a protected class and was subjected to an adverse employment action and that otherwise similarly situated employees outside Ms. Alderson's class were treated differently. *Standard, supra*. Although Ms. Alderson is a member of a protected claim and termination is an adverse job action, Ms. Alderson has not alleged that she was treated less favorably than white co-workers on a similarly lengthy medical leave. Ms. Alderson has failed to state a § 1981 claim with respect to her termination.

With respect to her claim that the failure to rehire her was discrimination based on race, again Ms. Alderson is a member of protected class and a failure to rehire would be an adverse action; however, she has failed to identify any employee outside of her protected class rehired after taking leave for a comparable length of time without being required to submit a new job application or consent to an interview for the job. Further, she has not shown that the new white employees hired while she was seeking to be rehired were similarly situated. Specifically, she has not offered evidence that the six persons hired had previously been on leave for a length of time comparable to the time plaintiff was on leave nor that the six persons hired were hired without submitting a job

10

application and without going through the interview process.   The disparate treatment claims based

on termination and failure to rehire are without merit.

In support of the claim perceived by the court to be one of hostile work environment,

plaintiff states in her opposition brief:

> [S]he was treated less favorably than her white co-
> workers, in that she was prohibited from taking
> breaks and going to lunch or dinner with other black
> employees (Alderson depo, pp. 46-47) while white
> employees took breaks together with other white
> employees (Alderson depo, p. 54); she was prohibited
> from talking on the telephone while other white
> employees were allowed to sit on the floor behind the
> counter and talk on the floor for hours at a time
> (Alderson depo, p. 50), she was not allowed personal
> phone calls and if she did make such a call, she was
> subject to reprimand or being written up while white
> employees were not;  she was not allowed to bring her
> purse or other items on the floor while white
> employees in her department brought purses on the
> floor every day (Alderson depo, p. 51); she and
> another black employee in the Fragrance Department
> of Parisian were reprimanded and scrutinized when
> they did not have the required number of customers
> listed in their "call book" when it was checked at the
> end of the month, whereas white employees who did
> not have the required number of customers in their
> call book were not reprimanded (Alderson depo, p.
> 58); she and another black employee had the majority
> of the workload when it came to stocking bays in their
> department while white employees had smaller stock
> areas (Alderson depo, pp. 59-60); and Ms. Alderson
> would end up having to replenish other peoples's
> (white employees) bays and white employees were
> not reprimanded or written up for their failure to do
> so.  (Alderson depo, p. 60).  Ms. Alderson was also
> treated unfairly as to alleged incidents of tardiness for
> work, whereas white employees were not written up
> for tardiness.   (Alderson depo, pp. 63-65).   Ms.
> Alderson would be called in by the personnel
> manager to explain alleged incidents of tardiness, but

> Ms. Alderson would explain that she was not late for
> work on the dates that the personnel manager claimed.
> (Alderson depo, p. 61). ... Ms. Alderson was placed
> on twelve month's probation and was "threatened"
> that it would affect her pay. (Alderson depo, p. 62.)
> During the twelve month period, Ms. Alderson was
> not late for work even once. *Id.* When the twelve
> month period expired, the probation was to be taken
> off Ms. Alderson's record but was not. *Id.* Ms.
> Alderson spoke with Ms. Maynor and the probation
> was finally removed in the sixteenth month instead of
> the twelfth month. *Id.* at 63. ... Ms. Alderson was
> told that she could not leave work early anymore,
> whereas her white co-workers were still able to leave.
> *Id.* at 66.

(Plaintiff's Brief in Opposition, pp.10-12). [1]

In *Miller v. Kenworth*, 277 F.3d 1269, 1275 (11th Cir. 2002), the Eleventh Circuit discussed

the required elements for a hostile work environment claim:

> A hostile work environment claim under Title VII is
> established upon proof that "the workplace is
> permeated with discriminatory intimidation, ridicule,
> and insult, that is sufficiently severe or pervasive to
> alter the conditions of the victim's employment and
> create an abusive working environment." *Harris v.
> Forklift Systems, Inc.*, 510 U.S. 17, 21, 21, 114 S.Ct.
> 367, 370, 126 L.Ed.2d 295 (1993). This court has
> repeatedly instructed that a plaintiff wishing to
> establish a hostile work environmental claim show:
> (1) that he belongs to a protected group; (2) that he
> has been subject to unwelcome harassment; (3) that
> the harassment must have been based on a protected
> characteristic of the employee, such as national
> origin; (4) that the harassment was sufficiently severe
> or pervasive to alter the terms and conditions of
> employment and create a discriminatorily abusive

---

[1] Although a hostile work environment claim was not raised in the complaint and Ms. Alderson has not subsequently raised it in an amended complaint, Parisian has apparently given its implied consent to the amendment of the complaint to include the factual allegations that make up the hostile work environment claim. See Rule 15(b), FRCP.

> working environment; and (5) that the employer is
> responsible for such environment under either a
> theory of vicarious or of direct liability. ...

The court concludes based upon the allegations and the record that Ms. Alderson cannot

demonstrate that the alleged harassment was sufficiently severe or pervasive so as to alter the terms

and conditions of her employment creating a discriminatorily abusive working environment.

> ... [T]o be actionable, this behavior must result in both
> an environment "that a reasonable person would find
> hostile or abusive" and an environment that the victim
> "subjectively perceive[s] ... to be abusive." *Id.* ...
>
> In evaluating the objective severity of the harassment,
> we consider, among other factors: (1) the frequency
> of the conduct; (2) the severity of the conduct; (3)
> whether the conduct is physically threatening or
> humiliating, or a mere offensive utterance; and (4)
> whether the conduct unreasonably interferes with the
> employee's job performance. ...

*Miller*, 277 F.3d at 1276.

Ms. Alderson has not established the frequency of the conduct nor has she established the severity

of the conduct.  Many of the matters complained of are in fact dictated by Parisian policy. (See

Gruening depo, pp. 35-48). The fact that the policy may have been unevenly applied does not render

the conduct severe. The conduct alleged was neither physically threatening nor humiliating nor even

an offensive utterance. Finally, there is no evidence that the alleged conduct unreasonably interfered

with Ms. Alderson's job performance.   Plaintiff has failed to establish a *prima facie* case of hostile

work environment.

III.    <u>FMLA</u>

Under the FMLA, an eligible employee may take up to twelve weeks of unpaid leave during

any 12 month period due to the birth of a child,  placement of a child with the employee for adoption

or foster care, care of an immediate family member with a serious health condition, or a serious medical condition affecting the employee's ability to perform his work functions. 29 U.S.C. § 2612(A)-(D) (1993).  An FMLA claim must be brought within two years after the date of the last event constituting the alleged violation for which the action is brought.  29 U.S.C. § 2617(c)(1). If, however, there is a willful violation, the action may be brought within three years of the date of the last event constituting the alleged violation. 29 U.S.C. § 2617(c)(2).   Under the FMLA, an employer's conduct is willful if the employer, "knew or showed a reckless disregard" as to whether its conduct was prohibited by the FMLA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985).

Ms. Alderson received the twelve weeks of leave that she was entitled to under the FMLA. She also received an additional twelve weeks of Parisian leave.  The Parisian manual provides:

> HARDSHIP LEAVE.   Leaves of Absence for hardship will be granted for illness of the associate, spouse of associate, parent of associate, or child of associate.   Leaves will be limited to twelve (12) weeks in any 12 month period; however, leaves may be extended upon application and approval by the Corporate Benefits Department, as follows:
>
> A.      ILLNESS OF ASSOCIATE  – maximum of six (6) months in any twelve (12) month period.

(Exhibit 21 to Alderson depo).

The manual clearly limits leave to twelve weeks unless extended to a maximum of six months.  It appears from the manual and the discovery evidence that there was some misconception that 24 weeks (FMLA leave of 12 weeks and Parisian's leave of 12 weeks) was the same as six months.  In a letter to the EEOC, Jerry E. Kirby, Human Resources Legal Counsel, Mr. Kirby stated

"The maximum total leave available to any employee is twenty-four weeks – this includes 12 weeks

of Family Medical Leave and 12 weeks of personal leave.  Ms. Alderson's [name] was removed

from Parisian's active employment rolls on June 15, 1997, after twenty four weeks of leave."

(Plaintiff's exhibit #10).  In a letter to Blue Cross regarding COBRA benefits, Debbie Burkes  wrote

"Ms. Alderson's termination from our regular group should have been 6-29-97.  This is the date her

leave should have expired."  (Gruening depo, pp. 71-72).  Clearly Ms. Burkes recognized that six

months from December 29, 1996 (Ms. Alderson's first day of leave) would have been June 29, 1996.

In deposition, Jodi Gruening testified that :

> Q.     Is it in writing anywhere that the maximum leave someone can receive from Parisian
>        as an associate is 24 weeks consecutively?
>
> A.     I don't know if it's in writing anywhere but no case that I've ever been involved in
>        regarding leave is extended more than six months or 24 weeks.
>
> Q.     Which is it, six months or 24 weeks?
>
> A.     24 weeks.

(Gruening depo., p. 32).

Confusion about whether Ms. Alderson's leave would expire in twenty-four weeks or six months

(26 weeks) does not make the conduct of Parisian in terminating Ms. Alderson on June 15, 1997

after twenty-four weeks of leave willful.  The conduct may have been negligent but negligence does

not extend the statute of limitations period.

Alternatively, even if Parisian's conduct was willful, the FMLA claim is without merit.  A

plaintiff states a claim under the FMLA by showing:  (1) she availed herself of a protected right; (2)

she suffered an adverse employment decision; and (3) there is a causal connection between the

protected activity and the adverse employment decision.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367

15

(11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999). Parisian has not argued that Ms. Alderson has failed to establish a *prima facie* FMLA violation.  Instead, Parisian argues that Ms. Alderson was unable to "perform an essential function" of her job due to the continuation of a serious health condition and therefore she had no right to restoration to another position under the FMLA.  29 C.F.R. § 824.214(b).

Ms. Alderson argues that she was granted additional leave until July 19, 1997 and therefore still had over a month remaining on her approved leave when she was terminated.  She does not dispute that she received 12 weeks of leave under the FMLA and an additional 12 weeks under Parisian policy and that the total 24 weeks of leave would have ended on June 15, 1997.  Even if Parisian had given her six months (26 weeks) of leave, the maximum allowed by Parisian policy, her leave would have ended June 29, 1997.  It is clear that Ms. Alderson was unable to perform an essential function of her job on any one of the three possible leave expiration dates.  It is also clear that there was no assurance as to when she would be able to perform an essential function of her job. There was apparently no contact whatsoever between Ms. Alderson and Parisian between April 16, 1997 when she submitted her third leave request requesting that leave be extended to July 19, 1997and late September or early October 1997 when she notified Parisian she was ready to resume working.  Ms. Alderson did not learn that she had been terminated until October 1997 and did not learn that she was terminated effective June 15, 1997 until December 10, 1997, the date of the unemployment hearing.  There is no paperwork that indicates that she ever requested an additional extension of leave beyond July 19, 1997.

Ms. Alderson received the twelve weeks of leave time to which she was entitled under the FMLA as well as an additional twelve weeks pursuant to Parisian's policy.  At the expiration of the

16

leave (wherever it fell between June 16, 1997 and July 19, 1997), she was unable to return to work. Although she argues that if Parisian had notified her that her leave was not approved until July 19, 1997, "she would have taken the necessary action to make sure that her job was secure," (Plaintiff's brief in opposition, pp. 16-17) she did not have the baby until July 2, 1997 and was not given a doctor's release to return to work until October, 1997.   Although in brief, Ms. Alderson states that "she telephoned defendant when her approved leave expired on July 19, 1997, to express her wish to return to work," (Plaintiff's brief in opposition, p. 17), this is not supported by the record.  In deposition, Ms. Alderson testified that she notified Parisian of her desire to return to work in late September or October. She was not released by her physician to return to work until October, 1997. Because Ms. Alderson received all of the FMLA leave to which she was entitled and because she was unable to perform an essential function of her job at both the expiration of twenty-four weeks, twenty-six weeks and even at the expiration of July 19, 1997, the date to which she maintains her leave had been extended, Parisian is entitled to summary judgment on the FMLA claim.

IV.     Title VII & Section 1981 claims for sex and pregnancy discrimination

Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex. ..." 42 U.S.C. Section 2000e-2(a)(1).  The Pregnancy Discrimination Act ("PDA") amended Title VII to specify that sex discrimination under Title VII includes discrimination on the basis of pregnancy.  42 U.S.C. § 2000e(k).   The same analysis used in other Title VII sex discrimination claims applies to pregnancy discrimination claims. *Armindo v. Padlocker, Inc.*, 209 F.3d 1319 (11th Cir. 2000).  Although the PDA prohibits discrimination on the basis of pregnancy, it "does not

require that employers give preferential treatment to pregnant employees." *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309 (11ᵗʰ Cir. 1999). Because Alderson attempts to prove her case with circumstantial evidence, the Court must apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, Vylse Alderson has the initial burden of establishing a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of pregnancy discrimination, a plaintiff must show:    she belongs to a protected group; she was qualified to fill the  position sought; she suffered an adverse effect on her employment; and she suffered a differential application of work rules. *Spivey*, 196 F.3d at 1312.

Ms. Alderson cannot show a *prima facie* case of pregnancy discrimination because she has not shown that she was treated differently than non-pregnant employees who took leave. From January 1996 through December 1997, no other sales support employee at Eastwood exceeded the time allowed for personal leave. (Kirby declaration, ¶ 3). Because she has not established a *prima facie* case, it is unnecessary to proceed further with the burden-shifting analysis. Parisian is entitled to summary judgment on the pregnancy discrimination claim.[2/]

V.    Retaliation

Any claim of  retaliation has been abandoned by plaintiff as this claim was addressed in Parisian's motion for summary judgment but has not been responded to in Ms. Alderson's brief in

---

[2/]    Ms. Alderson argues that Parisian is collaterally estopped from relitigating the reason for her termination. She relies on the decision of the appeals referee following a hearing on her eligibility for unemployment benefits. The referee concluded: "The available evidence in this case indicates the claimant was involuntarily terminated from her job while on a maternity leave-of-absence. The claimant reapplied for her job when she was released by her physician as able to return to work." The decision was "The examiner's determination is affirmed. The claimant is eligible for benefits without disqualification." The finding of the appeals referee does not have a preclusive effect on this Title VII action because it has not been judicially reviewed. See *University of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986); *Bishop v. City of Birmingham Police Dept.*, 361 F.3d 607, 609 (11ᵗʰ Cir. 2004).

opposition to Parisian's motion for summary judgment. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000).

Based on the foregoing, Parisian's motion for summary judgment (document #17) is due to be GRANTED. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith..

The clerk is DIRECTED to serve a copy of this order upon counsel for the parties.

As to the foregoing it is SO ORDERED this the ____16[th]____ day of June, 2004.

_____

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE